**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| **STEVES AND SONS, INC.,**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**NICK SCOTT COPELAND,<br>STIER SUPPLY COMPANY,<br>JONATHAN "RYAN" STIER,<br>RYAN STEAD,<br>KORADOOR, LLC, and<br>TKI, INC.,**<br><br>    **Defendants.** | Case No. 2:24-cv-07015-BHH<br><br>**DEFENDANT TKI, INC.'S<br>REPLY IN SUPPORT OF<br>MOTION TO DIMISS** |

  Defendant TKI, Inc. ("TKI"), by and through its undersigned counsel, submits this Reply in Support of its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6).

## I. INTRODUCTION

  Plaintiff Steves and Sons, Inc. ("Plaintiff") alleges that Defendant Nick Scott Copeland ("Copeland") and Paul Allen ("Allen")—two of Plaintiff's former employees—worked with one of its customers to launch KoraDoor, LLC ("KoraDoor"), a competing door manufacturing business in South Carolina. In doing so, Plaintiff claims that Copeland and Allen violated their non-compete agreements and misappropriated Plaintiff's trade secrets to gain competitive advantage.

  TKI is a North Carolina-based millwork supply company. TKI's only connection to this alleged scheme is its participation in negotiations over a proposed supply contract, whereby TKI

1

would have supplied KoraDoor with door slabs.[1]  It is undisputed that the parties never reached any agreement and that TKI never supplied any products to KoraDoor.  (Compl. ¶ 82 (alleging that Allen admitted the "Stier and TKI could not reach an agreement"); Decl. of Taimur Khan ¶ 12 ("TKI decided not to pursue the supply agreement . . . I informed Nick Copeland that TKI was not interest in pursuing this agreement in January of 2024.").[2]  Nevertheless, Plaintiff alleges that TKI participated in this conspiracy and brings claims against TKI for violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 ("DTSA"), violation of the South Carolina Trade Secrets Act, S.C. Code §§ 39-8-10, et seq. ("SCTSA"), tortious interference with a contractual relationship, civil conspiracy, aiding and abetting a breach of fiduciary duty, and unjust enrichment.

Plaintiff contends that this Court has specific jurisdiction over TKI because TKI knew that some of the alleged co-conspirators—specifically, Defendants Jonathan "Ryan" Stier ("Stier") and Stier Supply Company ("SSC"), both South Carolina citizens—would "perform their parts of the conspiracy in South Carolina" and because it "expected that [KoraDoor] would operate" in South Carolina. (Pl.'s Response at 12.)  Alternatively, Plaintiff contends that personal jurisdiction exists under the conspiracy theory of jurisdiction because it has sufficiently alleged TKI's participation in the Defendants' conspiracy to "start a new company in South Carolina using trade secrets misappropriated from Steves." (Id. at 22.)  Plaintiff is incorrect, and has failed to make a prima facie showing of personal jurisdiction under either analysis.

**First**, Plaintiff has failed to make a prima facie showing that personal jurisdiction exists under the traditional specific jurisdiction analysis.  Plaintiff cannot demonstrate that TKI has

---

[1] At the time, KoraDoor had not been formed and the entity contemplated by these negotiations would have been referred to differently.
[2] The Declaration of Taimur Khan is attached to TKI's Motion to Dismiss as Exhibit A at ECF No. 18-1.

2

sufficient contacts with South Carolina to establish purposeful availment. Plaintiff attempts to downplay the importance of the factors used in the Fourth Circuit to a defendant's contacts, (id. at 12-18), but it cannot escape the fact that these factors weigh against a finding of personal jurisdiction in this case. Plaintiff's minimum contacts argument hinges on TKI's negotiation of the proposed supply agreement. Of course, TKI never entered into any supply agreement with KoraDoor, and despite Plaintiff's strained argument that this is somehow irrelevant, the fact that TKI never reached an agreement or transacted business with KoraDoor necessarily diminishes the significance of those negotiations. Moreover, setting aside the absence of minimum contacts in this case, the contacts TKI does have are unrelated to the claims at issue, and the exercise of personal jurisdiction in this case would be constitutionally unreasonable.

**Second**, Plaintiff cannot establish conspiracy jurisdiction because it has failed to offer anything beyond "bare allegations" to establish TKI's participation in the conspiracy. Plaintiff's allegations that TKI acted with malice—or that it was even aware of the unlawful activity alleged in the Complaint—are conclusory and implausible on their face.

Alternatively, if the Court finds that personal jurisdiction exists in this case, it should dismiss Plaintiff's claims for violation of the Defend Trade Secrets Act (Count One), violation of the South Carolina Trade Secrets Act (Count Two), and Civil Conspiracy (Count Six). The trade secrets claims fail because Plaintiff does not plausibly allege that TKI used or improperly acquired any of Plaintiff's purported trade secrets, and as discussed above, Plaintiff has failed to sufficiently plead all elements of civil conspiracy.

## II.     ARGUMENT

### A.     Plaintiff Has Failed to Make a <u>Prima Facie</u> Showing of Specific Jurisdiction

To establish specific jurisdiction, Plaintiff must make a prima facie showing that: (1) TKI purposefully availed itself of the privilege of conducting activities in South Carolina; (2) Plaintiff's claims arise out of those activities directed at South Carolina; and (3) the exercise of personal jurisdiction in this case would be constitutionally reasonable. Perdue Foods LLC v. BRF S.A., 814 F.3d 185, 189 (4th Cir. 2016). Plaintiff has failed on each prong.

        **i.    Plaintiff Has Not Shown Minimum Contacts Required to Demonstrate Purposeful Availment.**

To determine whether a defendant has availed itself of the privilege of conducting business in the state, courts ask whether the defendant has minimum contacts in the forum such that "it should reasonably anticipate being haled into court there." Id. at 189 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 105 S. Ct. 2174, 85 L.Ed.2d 528 (1985)). Courts in the Fourth Circuit use several, non-exclusive factors to make this determination in the business context:

> whether the defendant maintains offices or agents in the forum state; whether the defendant owns property in the forum state; whether the defendant reached into the forum state to solicit or initiate business; whether the defendant deliberately engaged in significant or long-term business activities in the forum state; whether the parties contractually agreed that the law of the forum state would govern disputes; whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; the nature, quality and extent of the parties' communications about the business being transacted; and whether the performance of contractual duties was to occur within the forum.

Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009).

Plaintiff acknowledges that few, if any, of these factors weigh in its favor. Nevertheless, Plaintiff argues that no one factor is necessary to support a finding of personal jurisdiction by collecting various cases where one factor or the other was found to be nondeterminative. (Pl.'s Response at 13 (arguing that "long-term business activity is unnecessary"); id. at 14 (arguing that maintaining offices or agents in the forum state is "unnecessary for specific jurisdiction"); id.

4

(arguing that "long-term business activity is unnecessary for specific jurisdiction"); id. at 15 (arguing that whether TKI initiated contact with the co-defendants is not, by itself, "determinative"); id. (arguing that in-person contact and travel to the forum state are not, by themselves, determinative); id. at 19 ("agreement to a choice-of-law clause is not necessary").) It may be the case that no single factor alone is controlling—indeed, TKI has never argued that position—but Plaintiff cannot avoid the fact these factors are all relevant, and its attempt to suggest otherwise misses the forest for the trees. It is entirely unremarkable that each factor has been found to be non-determinative in some context at some point. What is important is that, when viewed collectively, these factors weigh against a finding of personal jurisdiction in this case.[3] There is no serious dispute on that point.

Rather than engage with the Consulting Engineers factors, Plaintiff simply argues that TKI has established minimum contacts because it "participated in a conspiracy" to open a competing door manufacturing business in South Carolina. (Id. at 11.) This argument is misplaced for several reasons. First, it ignores the fact that, whatever contacts other defendants may have with South Carolina, under a traditional specific jurisdiction inquiry those contacts are not imputed to TKI. If they were, there would be no need for the theory of conspiracy jurisdiction, discussed in Section II.B., below.

Second, TKI's alleged "participation" consisted of its negotiation over a proposed supply agreement which was never consummated. Plaintiff argues that the fact that TKI never finalized

---

[3] Plaintiff highlights Johnson v. Sky Media, LLC, No. CV 1:19-3269-MGL-PJG, 2020 WL 1976312, at *5 (D.S.C. Apr. 23, 2020), report and recommendation adopted, No. CV 1:19-3269-MGL-PJG, 2020 WL 5793355 (D.S.C. Sept. 29, 2020), to argue that "specific jurisdiction can be proper even where the majority of the Consulting Engineers factors weight against a plaintiff." (Pl.'s Resp. at 10.) But the contacts in Johnson were more substantial than the contacts at issue here. Unlike in this case, the defendant in Johnson actually entered into a business relationship with the plaintiff.

5

the supply agreement or supplied any products does not impact the significance of these contacts, but this position is simply untenable. (Id. at 16.) "[A] single contract with an in-state entity will rarely establish 'significant' business activities in the forum state." Berry v. Secure Relationship, LLC, No. 2:22-cv-02815-DCN, 2022 WL 16720115, at *4 (D.S.C. Nov. 4, 2022); Pet Specialties, LLC v. Navisiontech, Inc., No. 1:18-cv-00985, 2019 WL 4773623, at *5 (M.D.N.C. Sept. 30, 2019) ("[O]nly the rare contract will, by itself, be significant enough to establish the minimum contacts needed for personal jurisdiction.").[4] If a single contract, fully executed and performed, will only "rarely" be enough to establish minimum contacts with a forum state, then a single potential contract, where no agreement was ever reached or performed, must be even rarer.[5] Discussing potential business in South Carolina is not the same as actually conducting business in South Carolina.

---

[4] Plaintiff criticizes TKI's reliance on "two unpublished opinions" in a footnote which is immediately followed by a citation to two unpublished opinions.

[5] Plaintiff contends that TKI has misread the quoted language in Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478, 105 S. Ct. 2174, 85 L.Ed.2d 528 (1985), and cites the full quote from Hoopeston Canning Co. v. Cullen, 318 U.S. 313, 316–17 (1943):

> The actual physical signing of contracts may be only one element in a broad range of business activities. Business may be done in a state although those doing the business are scrupulously careful to see that not a single contract is ever signed within that state's boundaries. Important as the execution of written contracts may be, it is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.

Presumably, Plaintiff is focused on the statement that "[t]he actual physical signing of contracts may be only one element in a broad range of business activities." Id. But this added context does not change the fact that "the future consequences"—i.e., the obligations and duties imposed after a contract is executed—constitute "the real object of the business truncation." Id. The fact that TKI did not reach the "important . . . intermediate step" of executing the supply agreement only strengthens the broader point—that the "real object" of those negotiations never came into being.

Here, the overwhelming majority of the Consulting Engineers factors weighs against personal jurisdiction in this case, and the only "contacts" offered to support personal jurisdiction are remote negotiations[6] over an agreement that was never made or performed. Plaintiff has failed to make a prima facie showing of purposeful availment.

### ii.    TKI's Prior Sales to SSC Are Unrelated to Plaintiff's Claims

Plaintiff argues that TKI's prior sales to SSC, which represent less than eight percent (8%) of TKI's business between 2021 and 2024, are sufficiently related to its claims to support a finding of personal jurisdiction. To be clear, whether these sales are "related" to Plaintiff's claims or not, they do not represent sufficient minimum contacts to support a finding of personal jurisdiction, even when considered together with TKI's abandoned negotiations over the supply agreement.[7]

Nevertheless, Plaintiff is mistaken. While "some relationships will support jurisdiction without a causal showing," not every relationship will. Ford Motor Co. v. Montana Eighth Jud. Dist. Ct., 592 U.S. 351, 362, 141 S. Ct. 1017, 1026, 209 L. Ed. 2d 225 (2021) ("That does not mean anything goes. In the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum.")

TKI's "relationship" with SSC is not sufficiently related to Plaintiff's claims in this case, which deal with separate sales to a separate entity. Despite Plaintiff's claim that "TKI's relationship with SSC forms the basis of TKI's conspiracy with SSC and Stier," (Pl.'s Response at 21), the Plaintiff's own allegations contradict this statement. Per the Complaint, it was

---

[6] Notably, to the extent TKI was negotiating with Allen or Copeland, these communications were not even directed to South Carolina residents.

[7] Plaintiff does not appear to dispute this point. When discussing minimum contacts, Plaintiff never explains why these sales constitute significant or long-term business activities; it simply argues that in some circumstances a contract that is "sufficiently egregious in impact" may be sufficient to support an exercise of personal jurisdiction. (Pl.'s Resp. at 13 (quoting Rosen v. Halperns' Steak & Seafood Co., 2019 WL 109327, at *4 (D.S.C. Jan. 4, 2019).)

7

Copeland—not Stier—who was tasked with "arrang[ing] a 'TKI meeting" to pursue a supply agreement, and Mr. Khan did not even meet Stier in-person until November 2023. (Compl. ¶¶ 43, 49, 54.) Whatever relationship TKI had with Stier and SSC, it has very little connection to the claims in this case.

Therefore, TKI's prior sales to SSC are too unrelated to Plaintiff's claims to support a finding of specific jurisdiction in this case.

### iii. The Exercise of Personal Jurisdiction Would Be Constitutionally Unreasonable.

As outlined in TKI's Motion to Dismiss, TKI would be burdened by having to litigate in South Carolina, while South Carolina's interests in this case are minimal and dismissing TKI will not cause any delays or inefficiencies at this stage. TKI was merely a _potential_ supplier. No agreement was ever reached, and certainly, no business was ever transacted. The exercise personal jurisdiction over TKI in these circumstances would violate the principles of fairness and substantial justice.

Therefore, Plaintiff has failed to make a _prima facie_ showing of specific jurisdiction.

### B. Plaintiff Has Failed to Establish Conspiracy Jurisdiction

To succeed under the theory of conspiracy jurisdiction, Plaintiff must "make a plausible claim (1) that a conspiracy existed; (2) that [TKI] participated in the conspiracy; and (3) that a co-conspirator's activities in furtherance of the conspiracy had sufficient contacts with [South Carolina] to subject that conspirator to jurisdiction in [South Carolina.]" SouthStar Fin., LLC v. T-Zone Health, Inc., No. 2:21-CV-02511-DCN, 2021 WL 5235223, at *4 (D.S.C. Nov. 10, 2021) (quoting Unspam Techs., Inc. v. Chernuk, 716 F.3d 322, 329 (4th Cir. 2013)). Civil conspiracy requires "(1) the combination or agreement of two or more persons, (2) to commit an unlawful or a lawful act by unlawful means, (3) together with the commission of an overt act in furtherance of

8

the agreement, and (4) damages proximately result to the plaintiff." Id. at *5. In addition to these elements, Plaintiff must also show that "the alleged conspirators 'acted with malice.'" Id. (quoting Waldrep Bros. Beauty Supply v. Wynn Beauty Supply Co., 992 F.2d 59, 63 (4th Cir. 1993).) Plaintiff acknowledges that it must offer "more than 'bare allegations'" to satisfy this requirement, and that "the conspiracy as well as the overt acts within the forum" must be pleaded with particulary. Id. (quoting Unspam Techs., Inc., 716 F.3d at 329). Nevertheless, bare allegations are the only thing Plaintiff provides.

The Complaint fails to adequately allege that TKI acted with malice or intent to harm Plaintiff. To state a claim for civil conspiracy, "the object of the conspiracy" must be "to ruin or damage the business of another." Waldrep Bros. Beauty Supply, 992 F.2d at 63 (emphasis in original) (internal quotations and alterations omitted). The case of SouthStar Fin., LLC v. T-Zone Health, Inc., No. 2:21-CV-02511-DCN, 2021 WL 5235223 (D.S.C. Nov. 10, 2021), is instructive on this point. In SouthStar, the plaintiff held a first priority lien on certain equipment that had been purchased by one of the defendants. This defendant later sold the equipment in an alleged "sham transaction" at below fair market value in an effort to avoid the plaintiff's lien. Id. at *4. The plaintiff brought conspiracy claims against this defendant, alongside the original seller of the equipment and the entity that subsequently purchased the equipment in the "sham transaction." Id. Despite the plaintiff's allegation that these defendants all conspired to "circumvent [the plaintiff's] lien" on the assets, id., the court held that this failed to satisfy the malice element of civil conspiracy and was insufficient to support the exercise of conspiracy jurisdiction. Id. at *5. Thus, the mere fact that the defendant's financial gain comes at the plaintiff's detriment—even where the defendant is knowingly attempting to circumvent the plaintiff's rights—"does not equate to an allegation that defendants acted with malice." Id.; Jinks v. Sea Pines Resort, LLC, No. 9:21-

CV-00138-DCN, 2021 WL 4711408 (D.S.C. Oct. 8, 2021) (holding that the plaintiff failed to sufficiently allege intent to harm, even if her complaint were "read as alleging that defendants conspired with the intent to permanently alter [her] property rights by passing an unlawful referendum and imposing a new, additional annual assessment.").

Plaintiff has alleged even less in this case. Plaintiff argues that it has alleged malice by claiming that "TKI knowingly coordinated with employees of Steves bound by non-competition covenants to 'milk' an 'opportunity' and 'pick it all' using trade secrets misappropriated from Steves by TKI's co-conspirators." (Pl.'s Response at 24.) In short, Plaintiff contends that TKI acted with malice because it knew that its codefendants were violating Plaintiff's rights. But the same could be said of the defendants in SouthStar who knowingly sought to "circumvent SouthStar's lien on 10 Minute's assets" through their "sham agreement." SouthStar Fin., LLC, 2021 WL 5235223, at *4. Thus, TKI's alleged knowledge that Allen and Copeland had "active non-compete, non-solicitation, and confidentiality agreements" or that they intended to use trade secrets misappropriated from Plaintiff is irrelevant to the issue of malice. Even assuming TKI was aware of these circumstances, the claim that TKI conspired to "circumvent" Plaintiff's rights does not equate to malice or an intent to harm Plaintiff.[8]

---

[8] As discussed in TKI's Motion to Dismiss, Plaintiff has also failed to plausibly allege that TKI was even aware that its co-defendants were misappropriating trade secrets. (Mot. to Dismiss at 14.) The Complaint highlights a text message from Taimur Khan referencing the "Hutt discussion," which Plaintiff claims demonstrates TKI's knowledge on this point. Mr. Khan has provided a sworn statement refuting this interpretation, which the Court may consider, even in the absence of an evidentiary hearing. See Hawkins v. i-TV Digitalis Tavkozlesi zrt., 935 F.3d 211, 226–27 (4th Cir. 2019) (explaining that the "prima facie case" analysis required on a Rule 12(b)(2) motion in the absence of an evidentiary hearing is unlike Rule 12(b)(6), insofar as "court may also consider affidavits submitted by both parties, although it must resolve all factual disputes and draw all reasonable inferences in favor of the party asserting jurisdiction") (emphasis added). Plaintiff argues that this is a factual dispute that must be resolved in its favor, but in doing so, it misses the point that Plaintiff's interpretation of that communication is simply unreasonable on its face. Mr. Khan's declaration only confirms what was already apparent from the message itself—that the

**C. Plaintiff Has Failed to State a Claim Under the Defend Trade Secrets Act or the South Carolina Trade Secrets Act.**

If the Court finds that personal jurisdiction exists, it should dismiss Plaintiff's trade secrets claims, because Plaintiff has not plausibly alleged that TKI ever "misappropriated" any of the purported trade secrets at issue. Under both the DTSA and the SCTSA, Plaintiff must demonstrate "misappropriation." "The DTSA and SCTSA generally define misappropriation as involving the improper acquisition, disclosure, or use of a trade secret." Indus. Packaging Supplies, Inc. v. Davidson, No. CV 6:18-0651-TMC, 2018 WL 10456201, at *4 (D.S.C. June 22, 2018).

Plaintiff argues that, regardless of whether it has plausibly alleged that TKI "used" its purported trade secrets, it has at least alleged that TKI "acquired" these trade secrets. Plaintiff points to Paragraphs 102 and 113 of the Complaint, which each allege that "SSC, Stier, Stead, KoraDoor, and TKI knew the information that Copeland and Allen had misappropriated and provided to them were trade secrets and that they had a legal obligation to refrain from using this information without Steves' permission." (Compl. ¶ 102, 113.) However, Plaintiff cannot rely on this allegation that TKI "acquired" the trade secrets for the same reason it cannot rely on its allegations that TKI "used" the trade secrets—those allegations are conclusory and implausible. As explained in TKI's Motion to Dismiss, nothing in the Complaint suggests that TKI was involved in creating KoraDoor or that it held any interest in KoraDoor. This is in stark contrast to the other defendants in this action, whose roles in helping to launch KoraDoor are spelled out by the Complaint. Just as TKI had no reason to use Plaintiff's trade secrets, it would have had no reason to "acquire" them.

---

"Hutt discussion" concerning one of Plaintiff's "targets" approaching TKI, has nothing to do with the alleged conspiracy to create KoraDoor. In any event, for the reasons stated above, Plaintiff has failed to invoke the conspiracy theory of jurisdiction because it has failed to plausibly allege malice and intent to harm.

11

Therefore, Plaintiffs claims for violation of the DTSA and SCTSA should be dismissed for failure to state a claim.

**D.　Plaintiff Has Failed to State a Claim for Civil Conspiracy.**

Plaintiff's claim for civil conspiracy should be dismissed for the same reasons set forth in Section II.B., above.

### III.　CONCLUSION

For the foregoing reasons, and for the reasons set forth in TKI's Motion to Dismiss, the Court should dismiss all claims against, pursuant to Rule 12(b)(2), or in the alternative, dismiss Plaintiff's claims against TKI for violation of the DTSA, violation of the SCTSA, and civil conspiracy.

Respectfully submitted,

*/s/* Robert L. Wehrman
Brian C. Duffy (Fed. ID. No. 9491)
Robert L. Wehrman (Fed. ID. No. 13426)
**DUFFY & YOUNG LLC**
96 Broad Street
Charleston, SC 29401
Tel.: (843) 720-2044
rwehrman@duffyandyoung.com
bduffy@duffyandyoung.com

*Attorneys for TKI, Inc.*

February 21, 2025
Charleston, South Carolina